IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID E. LEHMAN, Special Administrator of the estate of Julie A. Lehman, | ) ) ) ) | |
| Plaintiff, | ) ) | 7:09CV5007 |
| v. | ) ) | |
| WAL-MART STORES, INC., | ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) | |

The plaintiff's complaint alleges Julie A. Lehman slipped and fell on a wet, slippery floor in or near the automotive cleaning supply aisle of a Wal-Mart store in Chadron, Nebraska, and as a result of the fall, she suffered a severe subdural hematoma and ultimately died. The pending lawsuit includes a survivor action on behalf of Julie Lehman, and a wrongful death action on behalf of her spouse and next of kin. See filing no. 1-4.

Pursuant to the final progression order entered on September 30, 2009, the discovery deadline is December 29, 2009, with a North Platte pretrial conference and trial set for January 11, 2010 and February 16, 2010, respectively. Filing No. 11. Based on the court's record, it appears written discovery was served on the defendant by the plaintiff no earlier than November 6, 2009. See, filing no. 12.

On November 12, 2009, plaintiff's counsel served a notice to depose six to seven Wal-Mart employees from the Chadron store,[1] and a 30(b)(6) notice requiring

---

[1] The plaintiff's deposition notice described the employee deponents from the Chadron store by conduct rather than by name. In addition to the store's Safety Team Leader, the employees to be deposed from the Chadron store include those who responded at the scene of the fall, provided information for the store's incident report,

Wal-Mart to "designate and fully prepare one or more officers, directors, managing agents or other persons with consent to testify on its behalf" to provide testimony and all documents regarding 25 categories of information. Plaintiff's counsel noticed all these depositions to occur at his law office beginning at 9:00 a.m. on December 14, 2009 and continuing thereafter until completed. Filing No. 29-1, at CM/ECF pp. 4-10. Wal-Mart designated the following corporate representatives on November 25, 2009, all of whom are from Bentonville, Arkansas:

> Joe Dial–Knowledgeable about safety and maintenance policies.
> Todd Franke–Architectural manager with knowledge about flooring.
> George Alderman–Product buyer with reference to Febreze Auto.

Filing No. 29-1, at CM/ECF pp. 11-12.

As a result of more than four telephonic conferences, and the exchange of at least nine emails, the parties arrived at a deposition schedule which included deposing the Wal-Mart employees from the Chadron, Nebraska store in Chadron, where they worked and probably resided, rather than Scottsbluff.

Wal-Mart has moved to quash the plaintiff's 30(b)(6) notice. Filing No. 27. Wal-Mart claims its corporate witnesses should be deposed in Bentonville, Arkansas, and the scope of the documentary and testimonial discovery requested under 17 of the 25 topics described in the 30(b)(6) notice is overly broad and irrelevant. Filing No. 27, ¶ 10, at CM/ECF p. 6. The parties' personal and electronic mail efforts to curtail plaintiff's discovery requests have been futile.

---

cleaned the floor after the fall, last stocked the shelves with Febreze Auto prior to the fall, and allegedly spilled Febreze Auto on the floor. This apparently totals 6 to 7 employees.

Plaintiff's counsel will not agree to depose the defendant's corporate representatives at Bentonville, Arkansas. The general rule requires a Rule 30(b)(6) deposition to be taken at the corporation's principal place of business. Dwelly v. Yamaha Motor Corp., 214 F.R.D. 537, 541 (D. Minn. 2003). To the extent defendant's motion to quash seeks an order requiring the 30(b)(6) depositions to occur in Bentonville, Arkansas, Wal-Mart's principal place of business and the location of its corporate representatives and documents, the motion will be granted.

As to the 30(b)(6) areas of inquiry at issue, the court has reviewed these topics and notes as follows:

Paragraph 1 requests:

All analysis, testing, research, and/or study documents relating to or referring to whether any of the flooring surfaces, installed as of July 21, 2009, at the Wal-Mart store in Chadron, Nebraska, were slip resistant by any standard.

This request is vague, i.e. what does the phrase "slip resistant by any standard" mean? The request is also not limited to the automotive cleaning supply aisle, or even the retail customer locations of the store.

Paragraphs 2, 4, 5, 11, 15, and 21, the content of which is set forth below, are unlimited as to Wal-Mart location and are overbroad.

All documents relating to or referring to any analysis, literature reviewed, testing, research or study done to determine the slip resistance of any of the flooring surface installed at any Wal-Mart stores for the last 5 years.

All documents relating to or referring to any analysis, testing, research or study done within the last 5 years to determine the spill hazard in the Automotive area of any Wal-Mart store.

> All documents relating to or referring to the location and the selection of the proper location of spill stations in domestic Wal-Mart stores for the past 5 years from this date.

> Any demographic studies, or other studies, done in the last ten years, which relate to or refer to the age, physical characteristics, impairments, or other characteristics, such as the footwear typically worn while shopping at any Wal-Mart store, of Wal-Mart's domestic customers.[2]

> All documents or records, of any type, for any slip, trip, or falls in the Automotive area of any Wal-Mart store within the last ten years.

> For the past 5 years, all documents or records relating to or referring to any Febreze Auto bottle(s) that were not appropriately full of product or that had either loose tops or tops that had come off.

> All notes, discussion materials, and attendance rosters relating to any Safety Team meeting, or other similar meeting, conducted within 5 years of this date and relating to or referring to any spill(s) on flooring surfaces in the Automotive area of any Wal-Mart store.

Paragraph 3, the content of which is set forth below, is unlimited as to time and is overbroad.

> All documents relating to or referring to any analysis, testing, research or study done to determine the spill hazard in the Automotive area at the Chadron, Nebraska, Wal-Mart store.

Paragraphs 19 and 20, the content of which is set forth below, are unlimited as to Wal-Mart location, are not limited to the chemical that was allegedly spilled, and are overbroad.

---

[2]Having spent a fair amount of time in Wal-Mart stores in Florida and China, the court is keenly aware that geography and clientele has a substantial impact on what people use for footwear.

>For the past 5 years, all documents or records of returned product relating to Febreze Auto or Febreze Air Effects.
>
>For the past 5 years, all documents or records relating to or referring to the spillage of Febreze Auto or Febreze Air Effects.

Paragraph 23, the content of which is set forth below, is overbroad as to time and is not limited to flooring surfaces accessible to retail customers.

>All notes, discussion materials, and attendance rosters relating to any Safety Team meeting, or other similar meeting, conducted within 10 years of this date and relating to or referring to any spill(s) on flooring surfaces at the Chadron, Nebraska Wal-Mart.

The following four categories of information, paragraphs 6 through 9, can be discovered, but only to the extent Wal-Mart has the information within its possession; e.g., Wal-Mart is under no obligation to look beyond its files to locate advertisements for the products at issue, but to the extent it possesses such materials, they are subject to discovery.

>Any advertisements, memorandums, e-mails, letters, specifications, or documents of any kind regarding the flooring material selected and installed in the Automotive area at the Chadron, Nebraska, Wal-Mart store as of July 21, 2009.
>
>Any advertisements, memorandums, e-mails, letters, specifications, or documents of any kind regarding the flooring material selected and installed in the produce area at the Chadron, Nebraska, Wal-Mart store as of July 21, 2009.
>
>Any advertisements, memorandums, e-mails, letters, specifications, or documents of any kind regarding the flooring material selected and installed in the produce area at the Scottsbluff, Nebraska, Wal-Mart store as of this date.

Any advertisements, memorandums, e-mails, letters, specifications, or documents of any kind regarding the floor cleaning or waxing materials and/or methods, that had been used or employed in the month immediately preceding July 21, 2009, on the flooring in the Automotive area of the Chadron, Nebraska Wal-Mart store.

The foregoing is not intended to identify all the objections that may have merit with respect to plaintiff's requests. In order to enter a prompt ruling on defendant's motion to quash, the court need not and has not ruled on every objection raised by the defendant. The court is also not obligated to re-craft the plaintiff's discovery requests.

Accordingly,

IT IS ORDERED:

1) Except as to defendant's objections to paragraphs 6 through 9 of the plaintiff's 30(b)(6) notice, as limited in scope by the court's reasoning herein, the defendant's motion to quash, filing no. 27, is granted.

2) To the extent the defendant has not objected, or the court has limited but not quashed a 30(b)(6) deposition topic in response to defendant's objections, the plaintiff remains entitled to depose corporate representatives pursuant to the previously served Rule 30(b)(6) notice, provided such depositions are held in Bentonville, Arkansas, or other mutually agreed upon location. To avoid future scheduling problems, the parties shall meet and confer, and the remaining portions of the Rule 30(b)(6) deposition shall be re-noticed by the plaintiff for a date, time, and place mutually agreeable to counsel for both parties and the witnesses.

DATED this 8th day of December, 2009.

BY THE COURT:
*Richard G. Kopf*
United States District Judge